# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 10-01882 MMM (OPx) | Date | January 21, 2011 |

| | |
|---|---|
| Title | *Bradford v. Samsung Telecommunications America, LLC, et al.* |

| Present: The Honorable | MARGARET M. MORROW | |
|---|---|---|
| ANEL HUERTA | | N/A |
| Deputy Clerk | | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** Order to Show Cause Why Action Should Not Be Remanded for Lack of Subject Matter Jurisdiction

## I. BACKGROUND

In this putative class action, plaintiff John Bradford alleges that defendants Samsung Telecommunications America, LLC and T-Mobile USA, Inc. engaged in unlawful, unfair, and fraudulent business acts related to the advertising and sale of its Samsung Behold II mobile phone (Behold II).[1] Specifically, plaintiff contends that defendants misrepresented the upgrade capabilities of the Behold II in internet-based promotions and the statements of its sales representatives.[2]

The complaint alleges that consumers decided to purchase the Behold II, rather than other telephones, due to defendants' false representation that the Behold II would upgrade wirelessly from Android version 1.5 to Android version 2.0 when the newer version became available.[3] When

---

[1] Notice of Removal ("Removal"), Docket No. 1 (Dec. 3, 2010), Exh. A (Class Action Complaint ("Complaint")), ¶ 1.

[2] Complaint, ¶¶ 2-3.

[3] *Id.*, ¶¶ 2-3.

version 2.0 was released on October 26, 2009, Behold II did not automatically upgrade.[4] In response to consumer complaints, defendants made version 1.6 available during the week of June 21, 2010; version 1.6 purportedly lacked some of the capabilities of version 2.0.[5] Plaintiff contends that neither he, nor members of the proposed class, would have purchased the Behold II but for defendants' false representations.[6]

Plaintiff seeks to represent the following class: "[a]ll residents of California who purchased one or more Samsung Behold II mobile phones" after having been "exposed to a statement from Defendants that the Behold II would update to Android 2.0."[7] The complaint pleads six state law claims: (1) unfair, misleading and deceptive business practices in violation of Business & Professions Code § 17200; (2) untrue or misleading advertising in violation of Business & Professions Code § 17500; (3) violation of the Consumer Legal Remedies Act, Civil Code § 1750, *et seq.*; (4) negligent misrepresentation in violation of Civil Code §§ 1572(2), 1709, and 1710; (5) breach of the implied covenant of good faith and fair dealing; and (6) money had and received.[8] Plaintiff seeks compensatory damages equal to the purchase price of the Behold II phone paid by him and each class member; (2) restitution, including disgorgement of defendants' profits; (3) punitive damages under Civil Code § 1780(a)(4); and (4) attorneys' fees and costs of suit.[9]

## II. DISCUSSION

### A. Legal Standard Governing Removal Jurisdiction Under the Class Action Fairness Act ("CAFA")

The right to remove a case to federal court is entirely a creature of statute. See, e.g., *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979) ("The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress. We look to federal law to determine whether the elements of removal jurisdiction have been established under the statutes, keeping in mind that removal statutes are strictly construed against removal" (citations omitted)). The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case

---

[4] *Id.*, ¶ 4.

[5] *Id.*, ¶¶ 5-6.

[6] *Id.*, ¶ 17.

[7] *Id.*, ¶ 48.

[8] *Id.*, ¶¶ 57-99.

[9] *Id.* at 21-22.

2

originally filed in state court presents a federal question or is between citizens of different states. See 28 U.S.C. §§ 1441(a), (b); see also 28 U.S.C. § 1446 (setting forth removal procedures generally); *id.*, § 1453 (setting forth removal procedures for class actions). Only those state court actions that could originally have been filed in federal court can be removed. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending. . ."); see also, e.g., *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by defendant. Absent diversity of citizenship, federal-question jurisdiction is required" (footnotes omitted)); *Snow v. Ford Motor Co.*, 561 F.2d 787, 789 (9th Cir. 1977) ("[I]n the absence of a specific statutory exception, a federal court can exercise removal jurisdiction over a case only if it would have had jurisdiction over it as originally brought by the plaintiff" (citations omitted)).

In 2005, Congress enacted the Class Action Fairness Act of 2005 ("CAFA"), Pub.L. No. 109-2, 119 Stat. 4. CAFA vests district courts with original jurisdiction over class actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2); see also *Luther v. Countrywide Homes Loans Servicing LP*, 533 F.3d 1031, 1033-34 (9th Cir. 2008) ("The Class Action Fairness Act of 2005 § 4(a), 28 U.S.C. § 1332(d)(2), amended the requirements for diversity jurisdiction by granting district courts original jurisdiction over class actions exceeding $5,000,000 in controversy where at least one plaintiff is diverse from at least one defendant. In other words, complete diversity is not required. CAFA also provided for such class actions to be removable to federal court. See 28 U.S.C. § 1453(b). CAFA was enacted, in part, to 'restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction.' Pub.L. No. 109-2, § 2(b)(2), 119 Stat. 4, 5 (codified as a note to 28 U.S.C. § 1711)").

Under CAFA, the number of members of all proposed plaintiff classes must exceed 100 in the aggregate. 28 U.S.C. § 1332(d)(5)(B). See also *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020-21 (9th Cir. 2007) ("As a threshold matter, CAFA applies to 'class action' lawsuits where the aggregate number of members of all proposed plaintiff classes is 100 or more persons and where the primary defendants are not 'States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief.' § 1332(d)(5). . . . Once the prerequisites of § 1332(d)(5) are satisfied, CAFA vests federal courts with 'original' diversity jurisdiction over class actions if (1) the aggregate amount in controversy exceeds $5,000,000, and (2) any class member is a citizen of a state different from any defendant. § 1332(d)(2)"); *id.* at 1021 n. 3 ("The Fifth Circuit characterized § 1332(d)(5) as an 'exception' to CAFA jurisdiction conferred under § 1332(d)(2). . . . We view § 1332(d)(5) somewhat differently. . . . [S]atisfaction of § 1332(d)(5) serves as a prerequisite, rather than as an exception, to jurisdiction under § 1332(d)(2). This distinction is important because, as we address later, there are 'exceptions' to the statute in which jurisdiction otherwise exists under § 1332(d)(2) but the federal courts either *may* or *must* decline to exercise that

jurisdiction. See, e.g., § 1332(d)(3)-(4)").

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988) and *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985)). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1992)). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990) and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

As the Ninth Circuit has explained, CAFA does not disturb the traditional rule that the burden of establishing removal jurisdiction is on the proponent of federal jurisdiction. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006) ("We . . . hold that under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction").

### B. Whether Defendants Have Established That Removal is Proper

#### 1. Minimal Diversity

Plaintiff is a citizen of California.[10] Defendant Samsung Telecommunications America, LLC ("STA") is a Delaware corporation with its principal place of business in Texas.[11] Defendant T-Mobile is a Delaware corporation with its principal place of business in Washington.[12] Consequently, CAFA's minimal diversity requirement is satisfied.

#### 2. Class Size

Plaintiff seeks to represent a class of "hundreds or thousands" of similarly-situated California residents who purchased the Behold II.[13] Under CAFA, the number of members of all proposed plaintiff classes must exceed 100 in the aggregate. 28 U.S.C. § 1332(d)(5)(B). Based on the allegations of the complaint, the class size requirement appears to be satisfied as well.

---

[10]Complaint, ¶ 13.

[11]Removal, ¶ 7.

[12]*Id.*

[13]Complaint, ¶ 50.

### 3. Amount in Controversy

"In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008) (citing *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002)). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Id.* (emphasis original) (citing *Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005), and *Scherer v. Equitable Life Assurance Society of the United States*, 347 F.3d 394, 399 (2d Cir. 2003)).

Although the burden of proving removal jurisdiction rests with defendant, the burden of proof the defendant must satisfy differs depending on the nature of the damages allegations included in the plaintiff's complaint. "First, when the plaintiff fails to plead a specific amount of damages, the defendant seeking removal 'must prove by a preponderance of the evidence that the amount in controversy requirement has been met.'" *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 998 (9th Cir. 2007) (quoting *Abrego Abrego*, 443 F.3d at 683). "Second, if the complaint alleges damages in excess of the federal amount-in-controversy requirement, then the amount-in-controversy requirement is presumptively satisfied unless 'it appears to a 'legal certainty' that the claim is actually for less than the jurisdictional minimum.'" *Id.* (quoting *Abrego Abrego*, 443 at 683 n. 8). If, however, "the plaintiff has pled an amount in controversy less than $5,000,000, the party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met." *Id.* at 1000.

The *Lowdermilk* court based its conclusion on two principles. First, it stated that "as federal courts, we are courts of limited jurisdiction and we will strictly construe our jurisdiction." *Id.* at 998 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Second, the court noted, "it is well established that the plaintiff is 'master of her complaint' and can plead to avoid federal jurisdiction." *Id.* at 999. Taking these principles together, the court concluded that "subject to a 'good faith' requirement in pleading, a plaintiff may sue for less than the amount [ ]he may be entitled to if [ ]he wishes to avoid federal jurisdiction and remain in state court." *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)). Because jurisdiction is strictly construed, the bar for defeating a plaintiff's right to frame his complaint is high. The "legal certainty" standard sets such a high bar and ensures that plaintiffs retain their power to limit recovery to avoid federal jurisdiction. See *id.* ("By adopting "legal certainty" as the standard of proof, we guard the presumption against federal jurisdiction and preserve the plaintiff's prerogative, subject to the good faith requirement, to forgo a potentially larger recovery to remain in state court").

Plaintiff in this case alleges that his individual claim *does not* exceed the $75,000 threshold for federal diversity jurisdiction and that aggregate class claims *do not* exceed the $5,000,000 threshold

for federal jurisdiction under CAFA.[14] Thus, defendants must prove "with legal certainty that CAFA's jurisdictional amount is met."[15] See *Lowdermilk*, 479 F.3d at 998.

In their notice of removal, defendants offer a calculation of damages purportedly showing that the amount in controversy requirement is satisfied to a legal certainty.[16] Specifically, they assert that plaintiff's prayer for restitution, including disgorgement of profits, results in potential damages of more than $5,000,000.[17] As support for this claim, defendants report that they sold 12,000 Behold II telephones[18] at an average price of $218.00 per unit.[19] Restitution of the sales price, therefore, would place $2,616,000 at issue,[20] below the statutory amount in controversy minimum.

Defendants assert, however, that the amount in controversy exceeds $5,000,000 because the telephones "were sold with T-Mobile voice and/or data plans, typically under 1-2 year contracts,"[21] yielding average revenue of $564.00 per subscriber per year.[22] T-Mobile's average *net* revenue was

---

[14]*Id.*, ¶ 12.

[15]Defendants acknowledge in their notice of removal that they must show the amount in controversy meets the jurisdictional minimum to a legal certainty. (Removal, Docket No. 1 (Dec. 3, 2010), ¶ 8).

[16]*Id.*

[17]*Id.* (citing Complaint, ¶¶ 62, 69).

[18]Defendants contend that "additional units may have been sold," increasing the amount in controversy. (*Id.* (citing Declaration of Christin Aminoto, ("Aminoto Decl."), ¶ 3)). Specifically, defendants assert that, while internal sales records indicate that no less than 12,000 Behold II telephones were sold at T-Mobile retail stores in California during the class period, additional units "may have been sold in California through third-party retailers such as Walmart and Costco, through T-Mobile online sales, and through other on-line retailers such as Amazon.com." Defendants cite Aminoto's declaration in support if this contention, but the declaration does not address the issue. For purposes of this order, therefore, the court assumes that defendants sold 12,000 Behold II phones.

[19]Removal, ¶ 8. T-Mobile asserts that it purchased Behold II telephones at an average cost of $360.00 and sold them through T-Mobile retail stores at an average price of $218.00, for an average loss of $142.00 per unit ($360.00–$218.00). (Removal, ¶ 8 (citing Aminoto Decl., ¶ 3 ). Accepting the truth of this assertion, there appear to be no profits to disgorge.

[20]12,000 telephones x $218.00 = $2,616,000.

[21]*Id.* (citing Aminoto Decl., ¶ 4).

[22]*Id.* (citing Declaration of Ekwan E. Rhow, ("Ekwan Decl.") Exh. H, ¶ 2).

somewhat less, however, since T-Mobile incurred an average loss of $142 per phone. Subtracting this amount, T-Mobile's average net revenue per Behold II sold was $422.[23] Defendants argue that the amount in controversy is the product derived by multiplying the number of Behold II units sold (12,000) by the average net revenue ($422).[24] Because this totals $5,064,000, defendants conclude that "Plaintiff's alleged disgorgement claim against T-Mobile alone . . . put[s] the amount in controversy at over $5 million."[25]

Whether the court has jurisdiction, therefore, turns on whether T-Mobile's revenue from voice and/or data plans should be considered part of the amount in controversy. Plaintiff contends that only the retail value of the phones ($218.00 per unit) is at issue,[26] not the net revenue derived from the sale of phones plus voice and/or data plans ($422.00 per unit).[27]

Defendants have not shown to a legal certainty that their interpretation of plaintiff's claims is correct. Defendants assert that their Behold II phones "*were* sold with T-Mobile voice and/or data plans."[28] As evidence of this, they cite Aminoto's declaration, which states that "[t]he Behold II device is *typically* sold with a voice and/or data plan."[29] It is thus unclear how many Behold II phones were sold with voice and/or data plans. More fundamentally, it is unclear whether the sale of the voice and/or data plans is included in the wrongful acts that form the basis of plaintiff's complaint. This is because it is unclear whether Behold II's failure to upgrade to Android version 2.0 is attributable to the data plan, or rather, to the phone itself.[30]

---

[23]*Id.*

[24]*Id.*

[25]*Id.* Defendants assert that "the disgorgement claim against [defendant STA] would further raise the amount in controversy above the jurisdictional minimum." As noted, defendants' own numbers suggest they did not derive profits from their sale of the Behold II phones. They provide no information, moreover, regarding profits from the sale of voice and/or data plans. (*Id.*).

[26]Complaint, ¶ 12.

[27]Removal, ¶ 8.

[28]*Id.* (emphasis added).

[29]Aminoto Decl., ¶ 4 (emphasis added).

[30]Defendants assert that, in the event plaintiff prevails on class claims under California's Consumer Legal Remedies Act, "the class would be entitled to mandatory attorneys' fees and [might] also obtain punitive damages, which [would] further increase the amount in controversy." (Removal, ¶ 8). Attorneys' fees may be considered in evaluating whether the amount in controversy requirement has been satisfied if a plaintiff sues under a statute that authorizes an award of fees to the prevailing

As a consequence, defendants have failed to show to a legal certainty that the value of plaintiff's claims exceeds the jurisdictional minimum under CAFA. See *Lowdermilk*, 479 F.3d at 998 (quoting *Abrego Abrego*, 443 F.3d at 683).

### III. CONCLUSION

For the reasons stated, the court orders defendants to show cause on or before **January 28, 2011** why this action should not be remanded to San Bernardino Superior Court for lack of subject matter jurisdiction. Plaintiff may file a response no later than **February 4, 2011.**

---

party. See *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy"); *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982); see also *Peterson v. BASF Corp.*, 12 F.Supp.2d 964 (D. Minn. 1998) (holding that a district court scrutinizes both punitive damages and attorneys' fees claims more closely than a claim for actual damages in determining the amount in controversy). It is not sufficient for defendants simply to note that attorneys' fees are recoverable; rather, some breakdown or estimate must be provided and justified. See, e.g., *Ajimatanrareje v. Metropolitan Life Ins. Co.*, No. C 99-0614 SI ARB, 1999 WL 319216, *5 (N.D. Cal. May 12, 1999); *Faulkner v. Astro-Med, Inc.*, No. C 99-2562 SI, 1999 WL 820198 *4 (N.D. Cal. Oct. 4, 1999). In the absence of any evidence regarding the amount of attorneys' fees incurred or to be incurred, defendants fail to satisfy their burden of demonstrating that an award of fees will place the amount in controversy over the jurisdictional minimum.

Additionally, courts within the Ninth Circuit are split as to whether a court may consider only attorneys' fees accrued at the time of removal or fees that, at the time of removal, the parties can reasonably anticipate will be incurred over the life of the case. Compare *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1011 n. 4 (N.D. Cal. 2002) ("While an estimate of the amount in controversy must be made based on facts known at the time of removal, that does not imply that items such as future income loss, damages, or attorneys['] fees likely to be incurred cannot be estimated at the time of removal") with *Faulkner*, 1999 WL 820198 at *4 ("When estimating attorney's fees for the purposes of establishing jurisdiction, the only fees that can be considered are those incurred as of the date of removal," citing *Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993)). As defendants have provided no information regarding either accrued or anticipated attorneys' fees, the court need not resolve this issue. Given the Ninth Circuit's mandate that the removing party produce "summary-judgment-type evidence" showing that the amount in controversy requirement is met, *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004), defendants' speculation that "attorneys' fees . . . further increase the amount in controversy," is insufficient to prove that the jurisdictional minimum is satisfied. (*Id.*).

Likewise, although defendants are correct that punitive damages can be considered in determining the amount in controversy, they proffer no information regarding the likely range of any punitive damages recovery in this case. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001).